The first case on our calendar is 3B Medical v. SoClean. For the Council, good morning. Good morning, Your Honor. Daniel Kochin on behalf of Appellant 3B Medical. You may proceed. I'm just going to say good morning, Your Honor. I'm Scott Rader for the defendant, Appellee SoClean. Thank you, Mr. Kochin. You may proceed. Thank you, Your Honor. Your Honor, may it please the Court. This case involves the appropriate pleading standard in Lanham Act cases. Appellant 3B Medical alleged the following. One, that SoClean invested over $100 million in false advertising to conceal the existence and effect of ozone in its products. Two, that consumers were deceived into believing that SoClean does not use ozone and is safe. And three, that SoClean's false advertising caused 3B to lose sales, profits, and goodwill. Which they claim is speculative. Your argument that you will lose sales and profits and customers. Correct. That's what they claim, but that's evidence, Your Honor, by a small minority of consumers who, after researching the existence and effect of ozone, switched from SoClean's ozone-based products to 3B's lumen products. In his decision dismissing 3B's complaint, the district court found that 3B's allegations could be said to support the Lanham Act's causation requirement, but that 3B nonetheless failed to plead actual injury. The district court erred. Under Lexmark, an allegation of economic injury, such as lost sales, satisfies the Lanham Act's inquiry injury pleading requirement. I thought that Lexmark was only concerned with standing. Your Honor, Lexmark had to do, dealt with what constitutes the type of injury required to plead to advance a Lanham Act's cause of action. Yeah, with respect to whether you had standing, not with respect to whether that was a sufficient plea to meet 12b-6. Now, you know, I think in fact that Lexmark was quite clear that the pleading for 12b-6 remained the same. Given that said, I do think that you have a good argument that you've met the 12b-6 requirement, but I really think you're making a mistake to try to rely on Lexmark. Well, Your Honor, I think the important part of Lexmark, as it pertains to this case, is that economic injury, such as lost... to enable plaintiff to advance a Lanham Act cause of action. So, for example, if you look at Penn site 133 of the Lexmark decision, the court states the following. We thus hold that a plaintiff suing under section 1125a ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising. And that occurs... This is Judge Park. Could I ask you about that? The word directly there seems to suggest something different from your allegations, which are that, if I understand it right, that if customers knew the truth, then they would look elsewhere. And in looking elsewhere, they would find your products, which don't use ozone, as one of the alternatives in the market. And that seems to me indirect, where Lexmark says the injury has to be directly flowing. Well, your honor, in our case, the direct effect of the false advertising was to deceive consumers into believing that ozone was not used in the products and to presume that the products were safe. Now, if we... Yeah, that gets to the point. That gets to the point. If these people were hiding the fact of ozone, and you have some evidence that people, when they learned of ozone, moved away from that, to you, that may be a direct evidence. But why don't you focus on that? Yes, your honor. And that is the gist of our complaint. And that's why we allege in our complaint, both the effects of the false advertising on consumers, and then the effects of 3B. And Judge Park, to get to your point as well, once consumers, the minority, the small minority of consumers who actually research SoClean and ozone, move their sales from SoClean to the only other alternative in the market that doesn't use ozone. And that's 3B. Could I ask about that? Do you have a sense of what percent of CPAP machine owners wash by hand? Because it seems the market is not just the people who buy the product, but the universe of how people clean them. Well, your honor, I don't know what percentage wash by hand. But as we allege in the complaint, washing by hand is not an alternative. So, for example, SoClean and 3B both charge hundreds of dollars. For their products. And so the fact that consumers are paying hundreds of dollars for the products at issue here, as opposed to just washing the products by hand, suggests that washing by hand is not an alternative for the consumers who are looking to clean their products with something like the SoClean. Again, I don't think you need to say that it isn't an alternative for some. You don't need to have 100% elasticity. All you have to say is that there are a significant number of people who, having been willing to spend $300 for a cleaning thing, learning that one has ozone, will move to the only alternative that does not have ozone. Judge, you're exactly right. That's what we plead in our complaint. And that's why we believe that the consumers who are choosing to spend the money to invest in a cleaning device like the SoClean and its competing product, the Lumen, would not look at something like handwashing. As Lexmark says, you still have to have evidence of the lost sales. This is just to get you into the courtroom. That's exactly right. We are simply trying to get beyond the pleading stage of this complaint to be able to show with evidence that consumers were deceived, and the consumers were deceived would have purchased the Lumen products rather than purchasing the SoClean products. And that's the gist of our case. Thank you, counsel. You've reserved three minutes for rebuttal. We'll hear from SoClean. Okay. Good morning, counsel. Good morning, Your Honors. May it please the court. My name is Scott Rader from Mintz Levin, and we represent the defendant, Apelli SoClean. The plaintiff here does not plausibly allege any injury, and a plaintiff must plead injury to make out a Lanham Act case. In footnote six of Lexmark, the Supreme Court made it very clear that independent of the zone of interest analysis, a Lanham Act plaintiff still must satisfy each element of the cause of action. What would you require more than what they did to show injury? They showed that people, when they learned that your product had ozone, which you falsely, according to their allegation, had moved away from your product, and that the only alternative that was of the same level of cleanliness was theirs. What more would you have them show? So, for example, the district court... Understand me. Just to get into court. Right, right. Proving damages comes later. And if they can't prove damages, they can't get anywhere. But we're talking about 12B6. Right. So, for example, the Northern District of Arizona case that we cite in our brief, said that in a similar situation, you could have a survey, for example, a survey study. You could have economic analysis. The reason this is important, Your Honor, is because the advertisements here... Again, this is 12B6. You can show the evidence after. The question is, what is necessary to have something which is plausible? Which is plausible. Now, plausible doesn't mean nothing. But it means something that makes sense when you have evidence. And the evidence will have to be brought in later. Right. So, I think what's important to remember here is the advertisement started in 2012. They came to the market in 2018. That's pled in the complaint. And it's incorporated into the press release that the district court relied upon. So, for six years, these advertisements were running. And they weren't into the market. So, normally, you would be able to show lost sales. Here, what they're arguing is that their sales would have been even more when they came into the market otherwise. But they need to say something other than that conclusory statement. They could have had projections that would have shown... But look, why is it conclusory when you show that when people learned that you had ozone, they moved away from you? And that the only alternative without ozone is them? Why is it conclusory that that means that you're hiding the fact that you had ozone caused them damages? That is something that then they'll have to prove. But why is that not a plausible pleading? Because that's basically assuming there's a presumption of injury. That if someone were to learn that these advertisements were false, they would switch. But there's two other companies... But some people did switch. They showed that some people did leave you when they learned that you had ozone. But then those people... Why isn't that enough? What Judge Calabrese just pointed to, that the people who switched... For the reason that... I don't think that's enough to show damages. But that's enough to make out just to get by 12b6. Right. But then those people actually did purchase the lumen. So those people were in damage. That's what the district court found, which I think is correct. That the people... But that is a mistake. The fact that they didn't cause harm, that goes to whether they will... They won't be able to show damages. But again, in terms of whether it is plausible that you're hiding the fact that you had ozone, kept people with you who would have gone elsewhere, and who during that time didn't go to them, is something that just seems to follow logically. And I don't see why if something follows logically, you say that's conclusory. Well, because they're the only ones who would have the evidence of that. I mean, this is a case where there's no need for discovery. They're the ones who would have the evidence that they were harmed. And so if they haven't alleged anything... What you are saying is that they could have perhaps shown more. I don't think... Of course, they could have shown more. Of course, they could have shown more. But the question is, have they shown enough to make out a plausible case, which then goes to court? Because that's what courts are for. Courts are not to throw things out before you even get a chance to show the facts. Why isn't that plausible? I mean, I may not be understanding Iqbal, but I don't think that they're saying that in effect, we try the case before people have ever brought in any evidence. I understand your Honor's question. But in the situation here, the advertisements were running for six years. They haven't sued the other companies that sell ozone. So if you were to look at a but-for world, where our company... So obviously, A, the targets of our advertisements... You had 95% of the market of those with ozone? Correct, that's what they allege in their complaint. So we need to assume that. Yeah, that's what they allege. And that's an allegation of fact. So if that is so, why does it matter that they haven't gone after the other five? Because in a but-for world, where our advertisements, which according to them are false, weren't in the marketplace, customers still could hand wash, which was obviously the target of the advertisements, because they started six years earlier. Or they could choose the other two products. So the only way that their theory even gets off the starting gate is with the presumption of harm. Because if they're... Like your Honor said, they could have shown more. I mean, they're the ones who would know if they... If there were any lost sales, it would be incumbent on them. But in order to get by 12b-6, the test cannot be whether the petition, the plaintiff, whoever is bringing the suit, could have shown more. That can't be the test. The question is, have they shown something that makes it plausible that when you get to actual evidence and actual fact-finding, there will be evidence of injury? That's what the test is. And I don't know why that test hasn't been met, unless we're going to decide all the, you know, most cases at the 12b-6 level, which is remarkable. Right. Well, I think the answer, Your Honor, is that they can't just parrot the pleading standard and simply say in the abstract, we would have had more. Well, they did more than that, Counsel, didn't they? They submitted the affidavits of people who, once they found out your product used ozone, switched. That's more than nothing. Correct, Your Honor. They submitted the statements of the customers who actually purchased their product. But again, the district court found that that effectively doesn't get them anywhere because that wasn't any harm either, because those people actually purchased their products. So, for example, the Northern District of Arizona projections showing here's what they could have been. I don't believe we are bound by the Southern District of Arizona. It's the Northern District. Northern District. I agree. I'm not arguing that this court's bound by that. I'm just citing that as an example of where another court has found that here's an example of what a plaintiff could have done. I take Your Honor's point that the fact that they could have done it doesn't mean that they necessarily needed to have done it. But what I'm arguing is that they needed to have done something more. They're the ones who would know. They're the ones who would know how they were harmed. And I mean, there's no discovery for that. They're just claiming that they would have had more sales. Judge Park, what more would have been enough in your view? So let's say before they came to market, they had projections of how much we, I mean, they must have done some studies before they came to market. So let's say they had projections of how much, here's how much we would expect to make, you know, absent this evidence. Or let's say they would have spoken to distributors who said, you know, here's the issue or spoken to customers. I think there's a lot that they could have done. Those would have been projections. This was new to market at the time. So there wouldn't have been any actual sales data showing the impact. Right. Right. They must have some economic analysis. Otherwise, if you see in the marketplace, if you believe that somebody has false advertisements. Counsel, it seems to me that what you're suggesting now is actually much more speculative than what they actually showed. I mean, I don't mean it would be irrelevant and useless, but, you know, kind of saying, well, if we did have these, I guess I'm confused. I just think they need to do something. Only they would know what they could have done, but it should be more than just saying we would have more sales. Otherwise, anybody could just say that they would have had more sales. If you see somebody advertising a product, you could just, you know, you can't just enter the market and say, we would have done better. There has to be something more in our view. Counsel, they have more than that. As I said, I have the statements of people who changed once they found out that your product used ozone and they had. I don't know why it's not enough for 12B6, which is the question we're all asking, but your time has expired. And so I'm going to turn back to Mr. Colchin for his three minutes. Your Honor, it seems that the panel understands perfectly the gist of this. I don't know what else we could have done at the pleading stage. We had statements from consumers, the small minority of consumers, once they realized what in fact was contained in the SoClean product. Can I ask you, this is Judge Parr, could any market participant, let's say there were a variety of products and it's not just, I know you say this is sort of a two-player market, but let's say there's a bunch of players. Could any one of them, based on a misrepresentation by sort of the market leader with ozone, have brought a landmark claim, an alleged injury? Your Honor, I think the other competitors in the market would be hard-pressed to do that because they themselves use ozone. I'm asking a hypothetical question. Let's say there's a third way, not UV, not ozone, something else. And we don't know anything else about it. Would it be enough to say that consumers, knowing that ozone can be harmful and that SoClean used it, must have gone, would have found an alternative? Would that have been enough to show injury? I think that they probably would have had to do, to allege a bit more than that, such as consumers switching to their product once they realized what was contained in SoClean's product, the ozone. I think that's enough. And that's what, in our view, beyond a shadow of a doubt, gets us past the 12B6 hurdle. If they just say that SoClean's product contains ozone, we don't, therefore, we're harmed. I think it's a close call. You could have brought in some consumers who said, we switched to you once we learned that there was ozone in the other, and we would have switched to you earlier had we known earlier. And that would be a direct showing of damages. And unless you show something like that, you may not be able, if we go your way, to show damages when you actually get to that side. But you could have shown that. Correct. I mean, that is, Judge, you're exactly right. And that's what we intend to pursue once we get into, if and when we get into discovery, is just that analysis. What effect did SoClean's advertisements have on consumers? And how did that lead to consumers not switching earlier or not switching at all to 3B's products? And that's the gist of our case. And we think that, just as the panel suggested, the pleading here, we worked hard to connect the dots between SoClean's misrepresentation, the effect on consumers, the effect on 3B. And we think that satisfies our pleading standard. Thank you, counsel. Thank you both. We'll reserve decision on this interesting case.